## IN RE DANIEL POUZZNER, AN ATTORNEY

Superior Court    New Haven County    File #49710

Present:   Hon. EDWIN C. DICKENSON, Judge.

Lorin W. Willis, Attorney for the Grievance Committee.

Marsh, Stoddard & Day, Attorneys for the Respondent.

## MEMORANDUM FILED MARCH 25, 1937.

DICKENSON, J. The respondent has been presented on charges of unethical conduct. Denying the charges he has launched a counter attack of unfair investigation of his affairs. Complainant and respondent have both established their claims. The complainant has proven the respondent's conduct unethical in certain respects. The respondent has shown that the investigation that brought this to light was conducted unfairly in certain respects. The case of the complainant may stand independent of tainted evidence obtained by the investigators, however. The respondent contends that even so his constitutional rights have been invaded by the method of procedure and no judgment may therefor be entered against him. The complainant argues there is but one issue and that is whether it now appears to the court that the respondent is an unfit person to practice law.

The situation is one that would and has developed sharp antagonism. The complainant's counsel in argument has levelled a finger of scorn at the respondent as though he were a criminal. The respondent's counsel, quoting from Scripture has held him up as a martyr. The respondent is neither criminal nor martyr but a lawyer, who handling the business end of his firm, forgot that "the practice of law is not a craft or trade; it is a profession, the main purpose of which is to aid in the doing of justice according to the law between the state and the individual and between man and man." Rosenthal vs. State Bar Exam. Committee, 116 Conn. 409, 414.

Allowance must and has been made for the change in times and thought in the profession. Once it was unethical to take a case on a contingent basis of any sort. In this state at least, it is held that such a contract is not illegal but will be closely scrutinized. Some jurisdictions still hold that the attorney in

such a contract may not assume the costs of the action in event of loss and counsel for the complainant in the instant case contends this to be the law in this state. But the reason given for the rule holding such a contract legal seems to support an extension of it to cover costs in certain instances. It is said in **Gruskay vs. Simonauskas, 107 Conn. 380, 386;** "A contract of this character is often the only way by which the poor and helpless can have their rights vindicated and upheld and the injuries they have suffered redressed," and this statement is of peculiar significance in view of the advent of the automobile and the tremendous increase in personal injury claims as a result. It would often be as impossible for the injured person to pay costs as to pay a retainer, and to require a lawyer to demand costs would be either to defeat the reason for the rule or to encourage a fiction in which costs were charged but not collected.

If such a proceeding is found to be illegal or unethical it must be in instances where a plaintiff is able to pay costs and a gamble is taken by the attorney with the client that they shall not be paid if the case is lost. No such case has been shown in the instant proceeding.

While, in order to confine the trial to what is considered material issues the court has ruled out offers of testimony relating to the origin of a general investigation of the conduct of attorneys in New Haven, sufficient has been let in to furnish any necessary history of the proceeding.

It appears then that with the consent of the Superior Court judges certain insurance companies investigated the conduct of New Haven attorneys, including that of the respondent. From the testimony of the representatives of the insurance companies it appears that once having engaged an investigator they left the conduct of the investigation to him with little if any oversight.

The result, it must be confessed, was very different from the impartial investigation contemplated by the legislature in **G. S. Sections 5347-5348.** The complainant took no part in the original investigation. The complainant's attorney received the evidence of the investigation and presented such as he deemed relevant, first to a State Referee, appointed by the Judges, and later to the Court.

This evidence consisted largely of the testimony of former

clients of the respondent as to the manner in which they en-gaged him as counsel. These witnesses for the most part were honest witnesses. In addition the complainant offered the testimony of persons who claimed to have been paid for soliciting cases. These were of questionable honesty but in some instances their statements had honest corroborations. But the respondent himself has testified and offered evidence of his methods which evidence he can hardly expect the Court to disregard.

While the proceeding to discover whether or not there has been an abuse takes the form of a civil action, the form does not control the substance or affect the issue which is, upon hearing, does it appear the respondent is a fit person to prac-tice law. The Court suo motu may inquire into the attorney's conduct and is only required to see that the respondent has a fair opportunity in court to meet all charges. That he has had in the instant case cannot be questioned.

It will not be seriously contended either that any unethical conduct of an attorney coming to the attention of the court in his presence may be made the subject of inquiry. To hold that it must be made the subject of another and new hearing when the conduct of the attorney is being examined under similar charges is to violate the rule of multiplicity of actions and put the state and the parties to an unwarranted expense and delay.

The only other argument the respondent can offer, and surely this is fallacious, is that the discovery of his unfitness to practice law having been made as a result of an unfair in-vestigation he is subject to no discipline and may continue in the practice, with no action by the court or grievance com-mittee.

The instant case is distinguishable from **Mooney vs. Holo-han, 79 U. S. Supreme Court Law Ed., page 791,** relied upon by the respondent. That was a criminal case in which constitu-tional rights were necessarily involved. In that case the claim was that the accused was convicted on perjured testimony and by the suppression of the testimony of the prosecutor. No such claim can be made here, the alleged abuse of process taking place prior to the trial in an independent investigation.

Passing by for the moment the manner in which the un-usual number of negligence cases handled by the respondent

was acquired, two facts stand out which are repugnant to the ideals of the profession in the instant proceeding. The first is that the moment the defendant stepped into a case he did so with a retainer form in his hand which he had signed by the prospective plaintiff, often before he was over the first shock of injury. This in itself is a strong suggestion of solicitation by the respondent taken with the further fact that the injured one was almost without exception a stranger to him.

The second disturbing fact, which is not only not disputed but admitted by the respondent, is that he occasionally advanced money to a client relying upon victory to recoup. The evil of this practice was twofold. It made the lawyer a secret partner in the case and in the class of people with whom the respondent dealt, it tended to furnish free and pernicious advertising. For, once it became known that a lawyer would not only take a case upon a contingent basis but would take it as a pledge and advance money upon it, obviously that lawyer would be popular in that class, and law suits would be marketable commodities.

When an attorney would go thus far it is not surprising that he should be suspected, at least, of going farther, and paying men of the type of those who admittedly recommended or called to his attention certain clients.

I do not believe the respondent made a business of so-called "ambulance chasing". He maintained no paid agents. Nor has it been proven that he paid any considerable sums to laymen solicitors. It does appear that, on a few scattered occasions, he gave honorariums to persons who had been instrumental in bringing cases to him.

It seems unnecessary in view of the picture presented to discuss in detail each charge by itself, although they have been carefully considered, each in its relation to that picture. Some of the cases came to the respondent through friends, undoubtedly, and their propriety cannot be questioned. Others came through doctors, hospital attendants and persons who had more than an altruistic interest in the case, the client or the lawyer. The cases as a whole present a remarkable record in numbers of unsolicited clients who were strangers to the respondent, even for so successful an attorney as the respondent. Enough of the charges have been substantiated to indicate improper solicitation in some cases, over-solicitation in binding clients to a retainer contract in many, and conduct in

the nature of barratry in a few.

It is found the respondent was guilty of unethical conduct.

There remains to be considered the nature of the judgment to be entered. The question being a personal one, that is, whether the respondent is a fit person to further practice law, his antecedents may well be considered. He came of a poor family, helped support them and supported himself while securing his education, gave this up to enter the army in the World War, acquitted himself with credit in the army and after he was mustered out did what was so difficult and what so many young men failed to do, took up his life where he had left it off, and became a successful lawyer.

He has suffered severe punishment in the loss of practice, the notoriety his case has received and as the subject of a none too scrupulous investigation.

The matter is too serious, however, to be disposed of by reprimand. It falls short of the necessity of disbarment. The respondent is suspended from the practice of law for the period of one year commencing April 15th, 1937.